## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

Your affiant, George A. Fox, being duly sworn, deposes and states as follows:

1.      Your affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. Your affiant is a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), and has served in this capacity since August of 2006 during which time he has completed the Criminal Investigator Training Program and the HSI, Special Agent Training programs at the Federal Law Enforcement Training Center. Your affiant is currently assigned to the Norfolk, Virginia Office of the Assistant Special Agent in Charge and has conducted investigations focusing on international narcotics trafficking involving the unlawful importation, transportation, and distribution of controlled substances and related money laundering activities. Through investigations and training, your affiant has become familiar with the methods and schemes employed by narcotics distributors to obtain, smuggle and distribute illegal narcotics and the related money laundering activities. Your affiant has executed numerous search warrants on the businesses, residences and electronic devices of individuals involved in various illegal activities.

2.      Your affiant is familiar with their numerous methods of concealing the whereabouts of their illegal activities, the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations and methods they employ to avoid innocent citizens from observing things indicative of drug trafficking. Your affiant is also familiar with the methods by which individuals involved in illegal activities utilize the Internet and social media platforms to facilitate their crimes. Prior to being employed by the Homeland Security Investigations as a Special Agent, your affiant was employed as a Police Officer by the Virginia Beach Police Department (VBPD). While employed by the Virginia Beach Police Department, your affiant was assigned for approximately eight (8) years as a narcotics investigator and served for two (2) years as the Virginia Beach Police Department Task Force Agent assigned to the Drug Enforcement Administration, Resident Agent In Charge Office in Norfolk, Virginia.

3.      Your affiant is currently participating in an investigation into the possession and distribution of methamphetamine, the conspiracy to distribute methamphetamine, and the illegal possession of firearms, in the Hampton Roads area of the Eastern District of Virginia. During the investigation, it has been determined that **Duane Anthony BIBLE** is involved in the conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual), a schedule II-controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), in the Eastern District of Virginia and elsewhere.

## CRIMINAL OFFENSES

4.      Section 841(a)(1) of Title 21 of the United States Code, provides, in part, that, "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

5.      Section 846 of Title 21 of the United States Code provides, in part, that, "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

6.      Your affiant makes this affidavit in support of an application for an arrest warrant for **Duane Anthony BIBLE,** based on probable cause to believe that **BIBLE** conspired to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual) a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), in the Eastern District of Virginia and elsewhere.

## ESSENTIAL FACTS CONSTITUTING THE OFFENSE CHARGED

7.      Since this affidavit is being submitted for the limited purpose of securing authorization for an arrest warrant, your affiant has not included each and every fact known to the investigative team concerning this investigation. Rather, your affiant has set forth only those facts believed to be necessary to establish probable cause that **Duane Anthony BIBLE** committed the listed offenses. Facts not set forth herein are not being relied upon in reaching the conclusion that an arrest warrant should be issued. Nor is it requested that the Court rely upon any facts not set forth herein in reviewing this affidavit.

8.      Your affiant has personally participated in the investigation of the offenses described in this affidavit. As a result of your affiant's participation in this investigation and a review of reports made to your affiant by other members of the investigative team, your affiant is familiar with the circumstances of this investigation. On the basis of this familiarity, and on the basis of the other information which I have reviewed and determined to be reliable, your affiant alleges the following:

9.      On or about February 9, 2021, **Duane Anthony BIBLE** was sentenced in the Norfolk Circuit Court (Norfolk, VA) for the following offenses punishable by imprisonment for a term exceeding one year: Maliciously Shoot or Throw Missile In/At Occupied Building, in violation of Virginia State Code § 18.2-279, and Possession of a Firearm by Violent Offender, in violation of Virginia State Code § 18.2-308.2. Following these sentencings, **BIBLE'S** right to ship, transport, possess, and receive a firearm was not restored. As set forth below, he was found carrying a firearm during and in relation to this drug trafficking conspiracy.

10.     In November 2024, investigators from Homeland Security Investigations received information from a reliable source of information ("SOI"), regarding the imminent delivery of a bulk-quantity of methamphetamine from Oklahoma to 4533 Bonney Road, Virginia Beach, VA, which was due to arrive on or about November 7, 2024.

11.     On November 7, 2024, members of the investigative team established physical surveillance in the area of 4453 Bonney Road, Virginia Beach, VA. At approximately 1933 hours, the SOI advised that the individual delivering the methamphetamine would be arriving in approximately 3 minutes. At approximately 1936 hours, a white Chrysler 300 bearing Minnesota registration "ZHM-671" arrived at 4453 Bonney Road, Virginia Beach, VA. The operator and sole occupant

2

of this vehicle was later positively identified as Minnesota resident, and commercial truck driver, coconspirator one ("CC-1").

12. Upon CC-1's arrival in the parking lot, he was observed waiting in his vehicle from approximately 1936 to 1950 hours, at which point he repositioned his vehicle to a different location within the same parking lot. The investigative team queried License Plate Reader (LPR) data, which corroborated the SOI's information, showing CC-1's vehicle was spotted in Oklahoma as recently as November 2, 2024. On November 6, 2024, CC-1's vehicle was spotted westbound, and en-route to Virginia Beach while in Kingston Springs, TN.

13. At approximately 1952 hours members of the Virginia Beach Police Department approached CC-1 and asked him to speak with them. At the same time, a Narcotics Detection Canine Handler conducted a free-air sniff of CC-1's vehicle. At approximately 1954 hours, the Narcotics Detection Canine positively alerted to the odor/presence of narcotics (heroin, methamphetamine, cocaine and/or ecstasy) on CC-1's vehicle.

14. Inside CC-1's vehicle, investigators located approximately 68 kilograms of a clear crystalline substance which would later be positively identified as methamphetamine[1], and a Ruger "Security-Six" revolver[2]. CC-1 was taken into custody, at which point two cellular phones were seized from his person.

15. On November 12, 2024, a member of the investigative team appeared before a Virginia State Magistrate and obtained a search warrant to download the contents of the cellular phones recovered from CC-1.

16. The investigative team reviewed the data recovered from CC-1's telephones and determined that CC-1 has ongoing involvement with the cross-country transportation of narcotics, at the direction of an unidentified individual who utilized the moniker, "John Doe." Data recovered from these devices indicates that CC-1 introduced other commercial motor vehicle drivers to "John Doe" for the purposes of allowing them to transport narcotics. During one conversation, an individual sent CC-1 a blurry photograph of their driver's license. In response to this, CC-1 advised the third party that the picture needed to be clear, because "they be checking to see if a mother fucker is snitching," and later added that if something happens, they know how to "always find a mother fucker."

17. Additionally, the investigative team identified multiple coconspirators from CC-1's telephone who had been involved in recent large-scale narcotics seizures regarding commercial

---

[1] The investigative team randomly selected three individual packages of methamphetamine from CC-1's bags to be analyzed. These packages were then sent to the United States Customs and Border Patrol, Savannah Laboratory, where they were forensically analyzed, and confirmed to be methamphetamine, with an approximate weight of 2996 grams. The purity analysis is pending.

[2] The "Security-Six" revolver was examined by a member of the Bureau of Alcohol, Tobacco, and Firearms and was found to be a firearm as defined in Title 18 USC, Chapter 44, Section 921 (a)(3), as well as having traveled in or affected interstate commerce.

motor vehicles. One of the individuals identified through the review of CC-1's mobile devices is **Duane Anthony BIBLE**, a commercial motor vehicle operator and resident of Norfolk, VA. CC-1 and **BIBLE** were shown to have multiple contacts across a variety of applications, to include Cash-App, encrypted messaging applications, and telephone/SMS communications.

18.     On January 10, 2025, the investigative team was contacted by members of the Drug Enforcement Administration ("DEA"), who were conducting surveillance on **BIBLE** at a commercial shipping warehouse in Dallas, TX. On this date, **BIBLE** loaded a palletized shipment of blueberries destined for Minnesota into a rented truck before departing the warehouse. Members of the Dallas Police Department observed **BIBLE** commit a traffic violation and conducted a traffic stop. During the traffic stop it was determined that **BIBLE** had an active arrest warrant, and **BIBLE** was taken into custody.

19.     Officers located and seized a mobile phone from **BIBLE** during his arrest. A Narcotics Detection Canine conducted a free-air sniff around **BIBLE's** vehicle and alerted to the odor/presence of narcotics. Inside the cab of the vehicle, officers discovered **BIBLE's** backpack and inside found a Canik TP-9 handgun. In the cargo area of the vehicle, officers located approximately 606 kilograms of methamphetamine[3] concealed in the palletized shipment of blueberries.

20.     Following **BIBLE's** arrest, a member of the DEA obtained a search warrant in the Northern District of Texas to download the contents of **BIBLE's** mobile phone. The investigative team reviewed data recovered from **BIBLE's** mobile phone and located additional information confirming **BIBLE** and CC-1's ongoing involvement in a narcotics distribution conspiracy, to include but not limited to the following:

   A)   On November 7, 2024, at approximately 2010 hours, **BIBLE** sent the following text message, "4453 Bonney Road, Virginia Beach, Virginia." CC-1 was arrested on November 7, 2024, at approximately 1954 hours. Between 1954 hours and 2010 hours, CC-1 was not allowed to send any communications via any of his mobile devices. **BIBLE** went on to inquire from an associate about where the "Feds" hold prisoners, and searched for the term, "drug bust virginia beach last niggt [CC-1]." Based on the experience and training of the investigative team, these facts indicate **BIBLE** had advance knowledge of CC-1's planned methamphetamine delivery to Virginia Beach, VA on November 7, 2024.

   B)   The investigative team further located conversations between CC-1 and **BIBLE** where the two discuss the status of their narcotics distribution activities, to include a timeframe for future deliveries, and a complaint from **BIBLE** to CC-1 that things are "dry."

---

[3]     The methamphetamine recovered from **BIBLE's** vehicle was sent to the DEA South Central Laboratory in Dallas, TX where it was forensically analyzed and found to contain 541.9 kilograms of pure (actual) methamphetamine with a 99% purity level. The seized shipment had a gross weight of 606.8 kilograms.

21.  The information recovered from **BIBLE**'s mobile phone gives further context to the information recovered from CC-1's mobile phone in establishing the relationship between CC-1 and **BIBLE** and confirming their ongoing involvement in the criminal conspiracy to distribute methamphetamine, along with others both known and unknown to the investigative team at this time.

22.  Based on the above, I respectfully submit there is probable cause to believe that **Duane Anthony BIBLE** conspired to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual) in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), in the Eastern District of Virginia and elsewhere.

_____
George A. Fox, Special Agent
Homeland Security Investigations

Sworn and subscribed to before me
On this 28th day of February, 2025

_____
United States Magistrate Judge
Norfolk, Virginia

Read and Reviewed:

_____
AUSA Kevin Comstock

5